# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

STEPHANIE LODATI, as Parent
and Natural Guardian of
JOHN DOE, an infant,
STEPHANIE LODATI, as Parent
and Natural Guardian of
JANE DOE, an infant,
and STEPHANIE LODATI,
individually;

                   Plaintiffs,

V.

FRIENDS ACADEMY,
THE BOARD OF TRUSTEES OF
FRIENDS ACADEMY, ANDREA
KELLY, individually and in her
official capacity, MARK
SCHOEFFEL, individually and
in his official capacity, CAROLYN
SKUDDER-POCIUS, individually
and in her official capacity,
JOZEPH HERCEG, individually
and in his official capacity, RON
BASKIND, individually and in
his official capacity, and PAMELA
MARTOCCI, individually and in
her official capacity;

                   Defendants.
_____/

**COMPLAINT FOR DAMAGES**
**JURY TRIAL DEMANDED**

Case No. 21-3875

**PLAINTIFFS' COMPLAINT FOR VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT, VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER NEW YORK GENERAL BUSINESS LAW, BREACH OF CONTRACT, BREACH OF EXPRESS WARRANTY, NEGLIGENCE, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND SLANDER**

## JURY TRIAL DEMANDED

NOW COME Plaintiffs, **STEPHANIE LODATI, as Parent and Natural Guardian of JOHN DOE, an infant, STEPHANIE LODATI, as Parent and Natural Guardian of JANE DOE, an infant, and STEPHANIE LODATI individually,** by and through and their attorneys, The Law Office of Keith Altman, and for their Complaint against Defendants, hereby state the following:

## BACKGROUND

1.      This is an action seeking damages for Defendants' violations of Plaintiffs' rights under Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, New York General Business Law, Breach of Contract, Breach of Express Warranty, Negligence, Negligent Infliction of Emotional Distress, and Slander.

## PARTIES

2.     Plaintiff Stephanie Lodati ("LODATI") is an adult individual and is the mother and natural guardian of Plaintiff JOHN DOE and JANE DOE.

3.     Plaintiff JOHN DOE is an infant who attended FRIENDS ACADEMY and was dismissed without just cause for alleged misconduct. JOHN DOE suffers from several mental health conditions which require that he be provided with various accommodations.

4.     JANE DOE is an infant who attended Friends Academy until she was dismissed, without just cause, in retaliation for JOHN DOE'S lawsuit concerning his dismissal.

5.     At all times hereinafter mentioned, Defendant FRIENDS ACADEMY ("FRIENDS") was, and still is, a co-ed day school for Play Group to 12th, at 270 Duck Pond Rd, Locust Valley, NY 11560.

6.     At all times hereinafter mentioned, Defendant THE BOARD OF TRUSTEES OF FRIENDS ACADEMY ("BOARD OF TRUSTEES"), was, and still is, the board entrusted with the power to make decisions on behalf of Defendant Friends Academy with their principal place of business at 270 Duck Pond Rd, Locust Valley, NY 11560.

7.     At all times hereinafter mentioned, Defendant ANDREA KELLY was and is still employed by Defendant FRIENDS ACADEMY as the Head of School and was acting in such capacity at all times relevant herein.

8.     At all times hereinafter mentioned, Defendant MARK SCHOEFFEL was and is still employed by Defendant FRIENDS ACADEMY as the Principal of Upper School and was acting in such capacity at all times relevant herein.

9.     At all times hereinafter mentioned, Defendant CAROLYN SKUDDER-POCIUS was and is still employed by Defendant FRIENDS ACADEMY.

10.    At all times hereinafter mentioned, Defendant JOZEPH HERCEG was and is still employed by Defendant FRIENDS ACADEMY as a Teacher and was acting in such capacity at all times relevant herein.

11.    At all times hereinafter mentioned, Defendant RON BASKIND was and still is employed by Defendant FRIENDS ACADEMY as the Director of Students and was acting in such capacity at all times relevant herein.

12.   At all times hereinafter mentioned, Defendant PAMELA MARTOCCI was and still is employed by Defendant FRIENDS ACADEMY as a Play Group Teacher and was acting in such capacity at all times relevant herein.

13.   All Defendants, other than Friend's Academy and The Board of Trustees of Friends Academy shall be known through this complaint as the "Individual Defendants."

14.   All of the Individual Defendants and each of them acted, at times, in a manner that exceeded the scope of their duties in their official capacities.  At other times, the Individual Defendants and each of them acted, at times, in a manner that was within the scope of their duties in their official capacities.

15.   Each Individual Defendant was aware of the role that the other Defendants played in the incidents and through their actions or inactions, approved of the others' conduct.

16.   At all times, the BOARD OF TRUSTEES was aware of the incidents forming the basis of this complaint and approved and ratified the actions of the other Defendants.

## JURISDICTION & VENUE

17.    This action arises under the laws of the United States, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

18.    This action arises under the following federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub.L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101 et seq., amended by the Americans with Disabilities Amendments Act (ADA-AA) with an effective date of January 1, 2009, which, at Title III of the ADA, prohibits discrimination in the provision of public services. Section 202 of the Act, 42 U.S.C. §12132 (Supp.1991), the Rehabilitation Act of 1973, §§504 and 505, as amended, 29 U.S.C.A. §§794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA. Both the ADA and §504 prohibit retaliation against persons with disabilities.

19.    In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims for Breach of Contract, Negligence, Negligent Infliction of Emotional Distress, Breach of Express Warranty, Violation of the NY GBL § 349, and Slander, because these state law claims are so closely related to the federal question claims so as to form the same case or controversy under Article III of the United State Constitution.

20.    This Court properly exercises personal jurisdiction over Defendants on the grounds that they are residing and conducting business within the State of New York.

21.    Venue in this action is proper in the United States District Court for the Eastern District of New York because the events relevant to this action occurred primarily within the geographical confines of the Eastern District of New York.  Furthermore, Plaintiffs are residents of the district and a majority of the Defendants, including Friends Academy, are located within the district.

## FACTUAL ALLEGATIONS

### Before the incident

22.    JOHN DOE began attending FRIENDS in the ninth grade together with his younger sister, JANE DOE.

23.    During JOHN DOE's interview process, the faculty and administration of FRIENDS emphasized their culture of inclusivity and openness to learning differences.  This can also be found in FRIENDS' promotional materials and on the school's website.

24.    LODATI believed FRIENDS when they portrayed their values as a culture of inclusivity and openness to learning differences. This was especially important to her and JOHN DOE because JOHN DOE suffers from many health conditions.

25.    Despite this portrayal, JOHN DOE was not welcomed into FRIENDS as the school had promised.  JOHN DOE was bullied and singled out by students and staff from the beginning.  In one incident, another student threatened JOHN DOE with physical harm and, despite being aware of the incident, FRIENDS and the Individual Defendants did not intervene to protect JOHN DOE.

26.    Additionally, several students routinely stole funds from JOHN DOE without facing intervention from the staff of FRIENDS.

27.    Several students routinely committed assault and battery on JOHN DOE as part of a hazing ritual. This was traumatic to JOHN DOE.

28.    FRIENDS, by and through its employees, including but not limited to MARK SCHOEFFEL, CAROLYN SKUDDER-POCIUS, JOZEPH HERCEG, and RON BASKIND did not intervene in the bullying and harassment of JOHN DOE despite knowledg that extensive bullying and harassment was occurring regularly.

29.    The staff at FRIENDS did nothing to protect JOHN DOE.  On the contrary, FRIENDS, by and through its employees, and including the Individual Defendants frequently placed JOHN DOE in situations where his health diagnosis would be caused to manifest. All of these actions were done for the purpose of inducing terror and panic in him.

30.    FRIENDS employees did not provide the proper accommodations for JOHN DOE's health problems, and even discussed his health conditions in a non-confidential setting, verbally and in writing, in a manner intended to express doubts about his conditions and in a manner intended to demean JOHN DOE, actions that often belittle people suffering from such serious health problems.

31.    FRIENDS' agents and employees suggested, verbally and in writing, that JOHN DOE might be suffering from physical abuse at home.  This happened in a non-confidential setting and was intended to demean JOHN DOE and LODATI.

32.    Upon information and belief, FRIENDS, by and through its employees, also attempted to terrorize and frighten all of the Plaintiffs by making unfounded accusations of plagiarism.

33.   In the time immediately before the incident, JOHN DOE'S mental health status was unstable, in part because of the actions and inactions of DEFENDANTS.

34.   The instability in his mental health required alteration of his medications.

35.   It is well established that alterations to psychoactive medications can lead to mood and behavioral disturbances.

## The incident

36.   In or around September of 2020, JOHN DOE joined a FRIENDS Zoom class. He changed his name to "George Floyd" and said, "I can't breathe".

37.   After the incident, JOHN DOE was educated about George Floyd's death and the meaning of the "Black Lives Matter"-Movement. Once he received this information, he was deeply sorry for what he had said and expressed his remorse.

## Student's response to the incident

38.   After the incident, JOHN DOE became the target of even more serious bullying by his classmates.

39.    FRIENDS and its agents and employees were aware of the situation but did nothing to protect JOHN DOE.

40.    In a continuation of their behavior towards JOHN DOE, Andrea Kelly, Head of School, drafted and distributed an inflammatory and prejudicial email to the entire FRIENDS community, condemning JOHN DOE's behavior and shaming him publicly. This occurred without talking to JOHN DOE or LODATI in private about the incident.

41.    In response to the letter, JOHN DOE received multiple death threats from his classmates.  Because of the imminent danger of physical harm to JOHN DOE caused by Andrea Kelly's letter, LODATI had to inform law enforcement of the events.

42.    Meanwhile, LODATI had to fear protestors outside her house and had to inform her neighbors.  This was also in direct response to the public email Andrea Kelly sent out.

43.    LODATI suffered from extreme emotional anguish caused by the campaign at FRIENDS against her son JOHN DOE, causing her to suffer nightmares and fluctuations in weight, as well as other mental health issues.

44.     JOHN DOE himself suffered extreme emotional anguish caused by the campaign at FRIENDS against him.  He had to undergo intense counseling and treatment to cope with the animus shown towards him by FRIENDS' agents and employees.

45.     The campaign against JOHN DOE ended in a per se dismissal from FRIENDS, without giving the child or his parent an opportunity to tell his version about the events or any other due process.

46.     LODATI filed a lawsuit against FRIENDS and their agents and employees because of their actions towards JOHN DOE.  Soon after, in direct response to the lawsuit filed by LODATI, JANE DOE was dismissed from FRIENDS without any justification whatsoever.

47.     The Board of Trustees were aware of the school's conduct and at all times and, by their actions or inactions, approved this conduct.

## **Respondeat Superior and Agency**

48.     Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

49.     Under federal and New York law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

50.   At all times relevant to this action, Defendants Mark Schoeffel, Carolyn Skudder-Pocius, Jozeph Herceg, Ron Baskind, and Pamela Martocci were employed by FRIENDS. Some of their acts and omissions relevant to this action were undertaken within the scope of their employment with FRIENDS and approved and ratified by the BOARD OF TRUSTEES.

51.   At the time of this complaint, only the Individual Defendants themselves are aware of the exact role that each Individual Defendant played in the events that are the subject of the lawsuit. For this reason, only the Individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

## FIRST CAUSE OF ACTION
## Violation of Title III of The Americans with Disabilities Act
## (Against all Defendants other than MARTOCCI)

52.   Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

53.     JOHN DOE is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).  He was diagnosed with many health issues early in life.

54.     Upon information and belief, FRIENDS is a private school receiving federal funds. It is subject to the Americans with Disabilities Act because the Act defines a public accommodation as an "[…] elementary, secondary, undergraduate, or postgraduate private school". 42 USCA § 12181 (7)(J).

55.     The ADA and its implementing regulations require that alternative services and modifications be made to qualified individuals with a disability.

56.     JOHN DOE has been denied reasonable accommodations for his documented health problems.

57.     FRIENDS discriminated against JOHN DOE on the basis of his disability.  From the beginning, he was bullied and singled-out by staff and classmates because of his disabilities. Despite being aware of the situation, FRIENDS through its employees, as well as the Individual Defendants and the Board Members, did nothing to protect JOHN DOE.

58.     The incident forming the basis of JOHN DOE'S dismissal was because of his disability.  Knowing of his disability, Defendants failed to consider the effects of JOHN DOE'S condition when dismissing him from the school.

59.     Defendants' inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate employing 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

60.     As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff JOHN DOE has sustained and continues to sustain injuries and damages.

## SECOND CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act of 1973
### (Against all Defendants other than MARTOCCI)

61.     Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

62.     Section 504 of the Rehabilitation Act, 29 U.S.C§ 794, bars all federally funded entities (governmental or otherwise) from discriminating based on disability. Section 504 states, in relevant part:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

63.  Upon information and belief, FRIENDS is a private school receiving federal funding and is therefore subject to Section 504 of the Rehabilitation Act of 1973.

64.  JOHN DOE is a disabled individual who was otherwise qualified to continue school at FRIENDS.

65.  The Rehabilitation Act and its implementing regulations require that Defendants administer programs/activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. 28 C.F.R. § 41.51 and 45C.F.R § 84.4.

66.  JOHN DOE instead was singled out and bullied because of his disabilities, eventually leading to his per se dismissal.

67.  As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, JOHN DOE has sustained and continues to sustain injuries and damages.

### THIRD CAUSE OF ACTION
### Breach of Contract (JOHN DOE)
### (Against Defendant FRIENDS)

68.   Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

69.   Plaintiffs and Defendant FRIENDS entered into a contract by which Defendant FRIENDS offered admission to Plaintiff JOHN DOE on specified terms.

70.   Plaintiffs accepted FRIENDS's offer and JOHN DOE attended FRIENDS pursuant to the terms of the agreement between the parties.

71.   There was a mutual exchange of consideration between Plaintiffs and FRIENDS by which JOHN DOE attended the school, involving payments and expenditure of time and FRIENDS made its services available to Plaintiffs, including educational opportunities.

72.   Part of the contract included the existence of policies set forth by FRIENDS. Included within those policies were terms concerning the duty of FRIENDS to a fair evaluation process in case of offenses.

73.   According to the terms, in the case of "minor offenses", FRIENDS was obligated to talk with the student to understand their

intention and self-awareness (FRIENDS's Handbook, XVIII. I. 1.). In the case of a "major offense", the Handbook stated under XVIII. I. 2. that an immediate communication between student, parents, and school had to take place.

74.    Neither of these things happened in JOHN DOE's case. FRIENDS violated their obligations under their own Handbook policies.

75.    As a result of FRIENDS' breach of the contract, Plaintiffs JOHN DOE and LODATI suffered severe emotional harm. Plaintiffs were also forced to expend financial resources to seek education elsewhere and to pay for intensive therapy.  Furthermore, JOHN DOE was denied the ability to attend the school of his choice and suffered further from having to enter classes at a new, different school.


## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY (JOHN DOE)
## (Against Defendant FRIENDS)


76.    Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

77.    During JOHN DOE's interview process, the faculty and administration of FRIENDS emphasized their culture of inclusivity and

openness to learning differences.  This can also be found in FRIENDS'
promotional materials and on the school's website.

78.  LODATI believed FRIENDS when they portrayed their
values as a culture of inclusivity and openness to learning differences.
This was especially important to her and JOHN DOE, because JOHN
DOE suffers from many health conditions.

79.  STEPAHNIE'S decision to enroll JOHN DOE at FRIENDS
was greatly influenced by the statements and representations made by
FRIENDS faculty and administration to LODATI that stressed
FRIENDS commitment to inclusivity of learning differences.

80.  The statements and representations made by FRIENDS
faculty and administration to LODATI that stressed FRIENDS
commitment to inclusivity of learning differences were express
warranties made to LODATI by FRIENDS.

81.  The statements and representations present on FRIENDS
promotional material and website that stressed FRIENDS commitment
to inclusivity of learning differences were express warranties made to
LODATI by FRIENDS.

82.   FRIENDS' failure to accommodate JOHN DOE's disability constitutes a breach of their express warranties to LODATI that they would be inclusive of learning differences such as those suffered by JOHN DOE.

83.   As a result of Defendant FRIENDS's breach of warranty, Plaintiffs John DOE and LODATI suffered harm, including emotional distress.

## FIFTH CAUSE OF ACTION
### Negligence Towards JOHN DOE
### (Against all Defendants other than MARTOCCI)

84.   Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

85.   When JOHN DOE was attending Friends, FRIENDS owed JOHN DOE a duty of care as in loco parentis.

86.   As a school, DEFENDANTS owed a duty to JOHN DOE to see that he was educated in a safe, secure manner free of bullying and harassment.  Furthermore, DEFENDANTS had a duty to provide JOHN DOE with proper accommodations reflective of his significant disabilities.  At all relevant times, DEFENDANTS were aware of these disabilities.

87.   DEFENDANTS breached their duties, including but not limited to, in the following ways:

a. Failing to protect JOHN DOE from being bullied and harassed.   Despite being aware of the situation, Defendants did nothing to protect JOHN DOE.

b. Failing to properly provide him with accommodations commensurate with his disabilities.

88.   As a direct result of Defendants' negligence, Plaintiff JOHN DOE suffered severe emotional harm and had to undergo therapy at Plaintiffs' own expense.

89.   It was foreseeable to Defendants that in not protecting JOHN DOE from abuse, as they were required to do, JOHN DOE would suffer harm.  Furthermore, it was foreseeable that in not providing JOHN DOE with the necessary accommodations, JOHN DOE would suffer harm.

### SIXTH CAUSE OF ACTION
### Negligent Infliction Of Emotional Distress (JOHN DOE)
### (Against all Defendants other than MARTOCCI)

90.   Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

91.    DEFENDANTS owed JOHN DOE a duty of care as in loco parentis.

92.    As a school, DEFENDANTS owed a duty to JOHN DOE to see that he was educated in a safe, secure manner free of bullying and harassment.  Furthermore, DEFENDANTS had a duty to provide JOHN DOE with proper accommodations reflective of his significant disabilities.  At all relevant times DEFENDANTS were aware of these disabilities.

93.    Defendants knew or should have known, should have known that their failure to prevent the bullying of JOHN DOE would result in Plaintiff JOHN DOE's serious emotional distress.

94.    Furthermore, in dismissing JOHN DOE without considering his disabilities and in a manner that was arbitrary and capricious, DEFENDANTS cause severe emotional distress to JOHN DOE.

95.    Defendants' conduct was extreme and outrageous. The frequency with which the bullying occurred, and the fact that DEFENDANTS did nothing was done to help JOHN DOE at any time, went beyond all possible bounds of decency.

96.   Defendants' actions proximately caused Plaintiff JOHN DOE's emotional injury, including severe emotional anguish.

### SEVENTH CAUSE OF ACTION
### Negligence Towards JANE DOE
### (Against Defendants FRIENDS, by and through
### its employees, including but not limited to
### ANDREA KELLY, and PAMELA MARTOCCI )

97.   Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

98.   When JANE DOE was attending Friends, Defendants owed JANE DOE a duty as in loco parentis.

99.   As a school, DEFENDANTS owed a duty to JANE DOE to see that she was educated in a safe, secure manner.

100.  In November through December of 2019, JANE DOE, age 3, was a student in grade Play Group in the Early Childhood Division at Friends Academy in Locust Valley, New York.

101.  The head teacher, Defendant Pamela Martocci, advised LODATI, the mother of JANE DOE, that JANE DOE was "W" sitting.  "W" sitting refers to a position where an individual sits on their buttocks with each leg bent back which resembles the letter 'W'.

102.  LODATI was advised that this was due to weak core strength and could cause JANE DOE to have an uneven stride and a lack of balance, among other things.

103.  Defendant Martocci expressed concern for JANE DOE.  She told LODATI that she frequently reminded JANE DOE to sit properly.

104.  Defendant Martocci told LODATI that one day during circle time, where the children sit down in a circle on the floor, she tied JANE DOE's legs together with a ribbon so would be unable to move them. This prevented JANE DOE from sitting in the "W" position.

105.  JANE DOE did not like it and cried to Defendant Martocci the next day asking her to 'please not tie my legs together again".

106.  Martocci is neither a physician nor an occupational therapist and had did not have the knowledge, skill, training, or experience to prescribe or provide remedies such as tying JANE DOE'S legs together using ribbon.

107.  LODATI was advised that JANE DOE needed to get evaluated by an Occupational Therapist.  Mrs. Martocci advised LODATI that an Occupational Therapist would be visiting the class soon to evaluate the students with the parents' permission.  LODATI was asked

to give permission for JANE DOE to be evaluated. Permission was granted.

108. LODATI was told JANE DOE qualified for Occupational Therapy and it would be paid by the parents, not by the school. JANE DOE's parents brought her to their Pediatrician in January of 2020. They discussed what the teacher had said regarding JANE DOE's sitting posture. The doctor was perplexed because she had been treating JANE DOE's since she was born and had never detected any problem with her core strength.

109. After performing numerous tests on JANE DOE, the doctor determined that there was no core weakness exhibited by JANE DOE, who showed no signs of weakness and had strong balance. The doctor was concerned that JANE DOE's legs had been tied together by a teacher. She told LODATI that she should discuss this with the school because it was highly improper behavior.

110. The doctor was upset with how this was handled and that expressed the opinion that it would have been traumatic for JANE DOE. The doctor told LODATI that she had never heard of any therapy that would involve tying a child's legs together for any reason.

111. LODATI brought this matter to the attention of the Head of Early Childhood, Kristin Minuto. Mrs. Minuto expressed dismay and apologized profusely for what Mrs. Martocci had done to the child. Ms. Minuto assured LODATI that these actions would never happen again.

112. The Principal of Lower School, Dot Woo, Kristin Minuto and Pamela Martocci had a meeting to discuss the incident. The parents of JANE DOE were not told what transpired at the meeting. The incident was not brought up again after that meeting. No apology was forthcoming from the school or from the teacher.

113. Defendant Martocci breached the duty of care to JANE DOE by tying her legs together without the knowledge, skill, training, or experience to support such an action. Martocci was well aware that she did not have the requisite knowledge training and experience.

114. Defendant FRIENDS and Defendant KELLY owed a duty to JANE DOE to supervise Defendant MARTOCCI.

115. FRIENDS and KELLY failed to properly supervise MARTOCCI.

116. As a result of FRIENDS', KELLY'S, and MARTOCCI'S actions, JANE DOE suffered physical pain and emotional distress.

117.  It was foreseeable to FRIENDS, KELLY, and MARTOCCI that their actions and/ or inactions with respect to JANE DOE could cause harm of the nature suffered by JANE DOE.  More specifically, without the proper knowledge, training, and experience, MARTOCCI should have known that tying JANE DOE'S legs together could cause her physical pain and emotional distress.

### EIGHTH CAUSE OF ACTION
### Negligence Infliction of Emotional Distress (JANE DOE)
### (Against Defendants FRIENDS, by and through
### its employees, including but not limited to
### ANDREA KELLY, and PAMELA MARTOCCI )

118.  Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

119. DEFENDANTS owed JANE DOE a duty of care as in loco parentis.

120.  As a school, DEFENDANTS owed a duty to JANE DOE to see that she was educated in a safe, secure manner.

121.  Defendants knew or should have known, that tying JANE DOE'S legs together with ribbon was likely to cause severe pain and distress.

122.  Furthermore, in dismissing JANE DOE without considering in a manner that was arbitrary, capricious, and retaliatory DEFENDANTS cause severe emotional distress to JANE DOE.

123. Defendants' actions proximately caused Plaintiff JANE DOE's emotional injury, including severe emotional anguish.


## NINTH CAUSE OF ACTION
### Slander Towards LODATI
### (Against Defendants Mark Schoeffel, Carolyn Skudder-Pocius, Jozeph Herceg, and Ron Baskind)

124.  Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

125.  Defendants Mark Schoeffel, Carolyn Skudder-Pocius, Jozeph Herceg, and Ron Baskind made public allegations that JOHN DOE had committed  plagiarism, and that LODATI had committed physical abuse. Defendants were aware that both of these allegations were false.

126.  Both statements clearly identified JOHN DOE and LODATI.

127.  Plaintiffs have suffered harm in the form of severe emotional distress at the fault of Defendants.

128.  The allegations were not protected by privilege.

## TENTH CAUSE OF ACTION
## Breach of Contract (LODATI)
## (Against Defendant FRIENDS)

129.   Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

130.   LODATI and FRIENDS entered a contract by which FRIENDS offered to admit LODATI'S daughter, JANE DOE, on specified terms.

131.   LODATI accepted FRIENDS' offer, and JANE DOE attended FRIENDS pursuant to the terms of the agreement between the parties.

132.   There was a mutual exchange of consideration by which JANE DOE attended the school, involving payments and expenditure of time and FRIENDS made its services available to LODATI, including educational opportunities for JANE DOE.

133.   A part of the contract was the existence of policies set forth by FRIENDS. Included within those policies were terms concerning the duty of FRIENDS to abide by the terms of their own handbook. LODATI agreed to enroll JANE DOE at FRIENDS on the understanding that FRIENDS would comply with their own handbook.

134.  JANE DOE was a student at the FRIENDS "lower school" at the time of her dismissal.

135.  FRIENDS had offered   to admit JANE DOE through her mother, LODATI, who had accepted continued admission of her daughter to FRIENDS for the Fall of 2021.  LODATI tendered the required deposit which was accepted by FRIENDS.

136.  The FRIENDS's Handbook repeatedly stresses that the goal of disciplinary measures in the lower school is not retribution, but rather to empower students to learn from their mistakes.

137.  Section XVII. H of the handbook states:

> In the Lower School, we use the Responsive Classroom approach, which is aligned with our Quaker tenets. The goals of this approach are to assure that children:
> - Feel physically and emotionally safe in school so that they can learn their best.
> - Learn the skills for working and learning collaboratively with others.
> - Identify and practice strategies to alter and improve choices moving forward.

138.  Section XVII. H. of the handbook goes on to list examples of potential disciplinary responses. None of the examples involve the outright dismissal of a student from the school.  Furthermore, all of the

examples involve focusing on the student's conduct that resulted in the disciplinary measure.

139.  LODATI sued FRIENDS and their agents and employees because of their behavior towards her son, JOHN DOE.  Soon after, in a direct response to the lawsuit, JANE DOE was dismissed from FRIENDS without any explanation whatsoever.

140.  Completely contrary to their own handbook, FRIENDS dismissed JANE DOE without even the mere pretext that JANE DOE had misbehaved.  Furthermore, FRIENDS actions towards JANE DOE were intended as retaliation against LODATI for filing the instant case, and for complaining about the actionable conduct described in the Seventh and Eighth Causes of Action herein, rather than any kind of conduct or failure on the part of JANE DOE.

141.  FRIENDS violated their obligations under their own Handbook policies, thereby constituting a breach of contract on the part of FRIENDS.

142.  As a result of Defendant FRIENDS's breach of the contract, Plaintiffs JANE DOE and LODATI suffered damages in an amount to be determined.

## ELEVENTH CAUSE OF ACTION
## Unfair And Deceptive Trade Practice Under New York General Business Law
## (Against all Defendants FRIENDS)

143.  Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

144.  Defendants have a statutory duty to refrain from unfair or deceptive acts or practices in consumer-oriented communications or acts like the advertising and description of their school.

145.  Defendants engaged in a systematic scheme to deceive Plaintiffs and all others interested in obtaining admission to FRIENDS. Staff, Board Members, and faculty emphasize their culture of inclusivity and openness to learning differences, and their handbook and advertising material state the same.

146.  Despite the fact that LODATI enrolled her children in FRIENDS for these reasons, both children were dismissed under circumstances that were in stark contrast to the statements made in the admission process.

147.  In retaliation for JOHN DOE seeking redress for his unwarranted dismissal and, because LODATI complained about the

bizarre conduct of a teacher, FRIENDS also dismissed JANE DOE from the school without any legitimate basis, despite having already contractually agreeing to JANE DOE attending FRIENDS in the Fall of 2021.

148. Defendants' conduct was deceptive, misleading, and undertaken in conscious disregard of, and with reckless indifference to, Plaintiffs' rights and interests.

149. Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of N.Y. Gen. Bus. Law § 349 et seq.

150. Plaintiffs are entitled to recover actual, consequential, monetary, and punitive damages, equitable and declaratory relief, any statutory allowable amounts and costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant them relief as follows:

(1) Issue a permanent injunction prohibiting Defendant FRIENDS from enforcing either of Plaintiff's per se dismissals;

(2) Compensatory damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress;

(3) Punitive damages against the defendant;

(4) Attorneys' fees;

(5) Costs of the suit;

(6) Injunctive relief; and

(7) Such other relief as the Court may deem proper.


## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.


Date: July 9, 2021

Respectfully Submitted,

*/s/Keith Altman*
Keith Altman (*pro hac vice to be applied for*)
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, MI 48331
516-456-5885
kaltman@lawampmmt.com